Portfolio Recovery Assocs., LLC v. Strifler, No. 420-10-10 Bncv (Wesley, J., Sept. 2, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

### STATE OF VERMONT

**SUPERIOR COURT**                  **CIVIL DIVISION**
**Bennington Unit.**                    **Docket No. 420-10-10 Bncv**

**PORTFOLIO RECOVERY ASSOCIATES, LLC**
    **Plaintiff**

    **v.**

**EVELYN STRIFLER,**
    **Defendant**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This is an action on an open account in which Plaintiff Portfolio Recovery Associates ("PRA") seeks to recover $6,967.97 in past due credit card charges from Defendant Evelyn Strifler. A merits hearing was held on March 31, 2011 at which PRA was represented by attorney Gwendolyn Harris, and Defendant appeared without legal representation.

**Discussion of Evidence**

The witnesses a trial were Elaine Lark, the custodian of records for PRA, and Ms. Strifler. Based upon the evidence presented, and as further discussed below, the Court concludes that PRA has not met its burden of proof as to either its ownership of an account identified to Ms. Strifler, or as to the amount outstanding on any such account.

PRA buys large amounts of distressed credit card debt from various banks after it is has been "charged off" for tax reasons in compliance with federal law. On January 29, 2010, PRA purchased a portfolio of delinquent credit card accounts from HSBC Card Services, Inc. ("HSBC"). PRA alleges that one of these accounts was associated with the Defendant, and that she now owes it money for the outstanding balance. In support of this contention plaintiff offered the following exhibits as evidence:

Exhibit 1.     A bill of sale indicating that HSBC sold to PRA "certain Purchased Receivables…listed on the attached <u>Exhibit A</u>". This document was signed by HSBC and showed an execution date of January 29, 2010. "Exhibit A" was not attached, nor was it otherwise introduced as evidence.[1]

Exhibit 2.     A spreadsheet of information purportedly describing the account of Ms. Strifler, including her name, account number, phone number, last date of payment, last purchase, her social security number, outstanding balance,

---

[1] Ms. Lark testified that "Exhibit A" was not produced because of confidentiality concerns. She also conceded that nothing in Exhibit 1 establishes that the account subject to this action was sold in accordance with this Bill of Sale, but that she was sure that "Exhibit A" listed Ms. Strifler's account based on the dates.

and other information. This information was sent by HSBC to PRA in connection with the bulk asset sale.

Exhibit 3. An affidavit of the Department Manager of Debt Sales of HSBC indicating that all electronic records sent "on or about January 26, 2010" were kept in the ordinary course of business.

Exhibit 4. A cardholder agreement from Union Plus Credit Card ("Union Plus") dated November 2005. This document is not signed by Ms. Strifler, nor does it specifically reference any particular account. It does state that "HSBC Card Services and/or HSBC Card Services (II) Inc. provides processing services for HSBC Bank Nevada, N.A."

Exhibit 5-8. Various "Postal Workers Mastercard" credit card statements from 2008 to 2009 indicating that Ms. Strifler failed to make payments to an entity called Union Plus Credit Card.

These exhibits were admitted based on the testimony of Ms. Lark. She stated that she is familiar with the accounting practices and maintenance of records at PRA, and that these documents are part of PRA's business records. She also stated that PRA did not receive the full history of this account—listing all purchases and payments—from HSBC.

In response, Ms. Strifler testified that she had several credit cards in the past and specifically remembered the Postal Workers Mastercard. She stated that she was looking at "a totally different account number" for that card, and could not recall ever dealing with HSBC bank regarding any credit card. She also explained that she had borrowed from family members to pay off her credit cards and that she believed that she could have already paid the balance on this card.

**Conclusions of Law**

PRA's case is premised entirely on the documents submitted into evidence without objection by the self-represented Defendant. While these exhibits are now part of the record, the Court considers their admissibility under the rules of evidence to aid in its determination of the appropriate weight to be given to these documents.

The eight exhibits are classic examples of hearsay. V.R.E. 801(c). These documents were offered as PRA's business records under V.R.E. 803(6), and the only foundation was the testimony of Ms. Lark. Under the rules of evidence, admission of a document as a business record requires (1) that it be "made at or near the time" of the events in question, (2) that it be made "by, or from information transmitted by, a person with knowledge," (3) that it was kept in the course of regularly conducted business, and (4) that it was the regular practice of the business to make the record. V.R.E. 803(6). This must be "shown by the testimony of the custodian or other qualified witness." *Id.* While PRA has generally met those requirements for its own records, the HSBC data incorporated in those records is itself hearsay.

2

As explained by the recent Vermont Superior Court case of *Unifund CCR Partners v. Bonfigli*, No. S1295-08 CnC (Vt. Sup. Ct. May 5, 2010)(Toor, J.):

> Generally, the business records exception to the hearsay rule requires that the record "be made at or near the time by, or from information transmitted by, a *person within the business* with firsthand knowledge." M. Graham, Vol. 3B Federal Practice and Procedure: Evidence § 7047 (Interim Edition, 200) (emphasis added). Thus, "[i]f the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy [which underlies the business records exception] does not extend to the information itself…" *Id.*
>
>         * * *
>
> In other words, the handoff of a collection of data from Party A to Party B, without any foundation as to its admissibility while the records of Party A, does not make it somehow admissible as the records of Party B merely because it is now in Party B's business files.

Records adopted by a business, though created by another business, may become the business records of the second entity. However, there must be some assurances that that the underlying records were reliable to begin with. See *Bell v. State*, 176 S.W.3d 90, 92 (Tex. App. 2004) (requiring, in addition to incorporation and reliance, that "the circumstances otherwise indicate the trustworthiness of the document"); *Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 112 (Tex. App. – Dallas, 1991) ("A document can comprise the records of another business if the second business determines the accuracy of the information generated by the first business.").

Here, PRA has made no showing that the documents sent by HSBC are trustworthy or otherwise reliable. The lone document which could potentially support this contention is a letter signed by Stuart Austin, the "custodian of the creditor's books and records" of HSBC (Exhibit 3).[2] This letter states that Mr. Austin is "aware of the process of the sale and assignment of electronically stored business records" and:

> On or about January 26, 2010, [HSBC] sold a pool of charged-off accounts by a Purchase Sale Agreement and Bill of Sale to [PRA]. As part of the sale of the Accounts, electronic records and other records were transferred on individual accounts to the debt buyer. These records were kept in the ordinary course of business of [HSBC]. I am not aware of any errors in these accounts. The above statements are true to the best of my knowledge.

This letter does not establish that the records transmitted by HSBC to PRA are reliable. It is broad and fails to explain Mr. Austin's relationship to the records generally, to say nothing of the records at issue in this case, particularly as regards any attestation that the records were

---

[2] The Court notes that this letter is itself hearsay, V.R.E. 801(c), and does not meet the test of a certificate for self-authentication established by V.R.E.902(11). See, *Asset Acceptance LLC v. Godfrey*, Doc. No. 343-6-09 Wmcv (Opinion & Order, 7/15/2011)(Wesley, J.)

made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters. In addition, Mr. Austin's letter refers to documents transferred in connection with a sale occurring "on or about January 26, 2010." The Bill of Sale admitted as evidence in this case shows a sale date of January 29, 2010. This discrepancy in the date underscores the questionable reliability of the underlying documents.

Even taking at face value the information contained in Plaintiff's exhibits, the inferences which must be made to establish PRA's ownership of the account are exceedingly large. First, PRA asks the court to infer that the Union Plus Agreement is related to Ms. Strifler's account. This agreement does not reference Ms. Strifler's account and is dated three years prior to the statements admitted into evidence. Notwithstanding these inconsistencies, PRA insists that this is the card holder agreement which would have been issued to Ms. Strifler for the Postal Workers Mastercard.

PRA then asks the Court to infer from the Union Plus Agreement that HSBC—presumably as either holder, assignee, agent or successor, though the evidence fails to establish which—may transfer delinquent accounts apparently owned by Union Plus. Yet, the agreement only references HSBC in passing, and delineates no explicit relationship between the two.[3] Finally, PRA asks the Court to infer that HSBC did in fact transfer Ms. Stifler's Union Plus account to PRA pursuant to the January 29, 2010 Bill of Sale (Exhibit 1). However, because PRA has not entered in evidence a list of accounts transferred pursuant to the purported Bill of Sale, there is no way for the Court to objectively verify that this account was actually sold.

Finally, in light of the incomplete transaction records included in the bulk purchase transmission, and the absence of any authentication by a person within HSBC with first-hand knowledge, the Court is unable to credit that the amount claimed due at write-off is the accurate balance owed on the account.

In sum, the evidence in this case is of questionable reliability and the proof of ownership of the debt relies on unsupported inferences. Under these circumstances, any holding that PRA owns this debt would be mere guess or conjecture, as would PRA's claim as to the outstanding balance, reached only by piling inference upon inference to build a smoke ladder into the skies of irresponsible speculation.

Based on the foregoing, it is hereby **ORDERED**:

Judgment is **GRANTED** to Defendant, and the complaint is **DISMISSED**.

DATED                                    , at Bennington, Vermont,


_____
John Wesley
Superior Court Judge

---

[3] PRA also explains that HSBC would not have acquired or transmitted Ms. Strifler's account data unless it had the ability to transfer the underlying debt; this proposition represents an elegant piece of logic, but it cannot suffice to cure the many uncertainties afflicting Plaintiff's burden of proof as discussed above.

4